UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| STEPHANIE ROZMAN, individually and on behalf all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| MENU FOODS MIDWEST CORPORATION, MENU FOODS INCOME FUND, MENU FOODS LIMITED, MENU FOODS INC., MENU FOODS HOLDINGS, INC., NUTRO PRODUCTS, INC., PETSMART, INC., CHEMNUTRA INC., and JOHN DOES 1 through 100, | ) ) ) ) ) ) ) ) ) | Case No. 07-cv-01808 |
| Defendants. | ) | |

---

**AMENDED CLASS ACTION COMPLAINT AND JURY DEMAND**

---

Plaintiff, Stephanie Rozman, individually and on behalf of all others similarly situated, by and through her attorneys, Reinhardt Wendorf & Blanchfield and Progressive Law Group LLC, complain against Defendants, upon personal knowledge as to herself, and as to all other matters upon information and belief based upon, among other things, the investigation made by their attorneys, as follows:

**INTRODUCTION**

1.      This is a class action seeking punitive damages and/or other redress for consumers who purchased pet food products designed, manufactured, marketed, distributed, labeled, promoted, and/or sold by the Defendants as described herein, and recalled in March 2007 or thereafter.

Dockets.Justia.com

2.      Plaintiff and similarly situated consumers have pets who have died, or suffered kidney failure or other injury from eating the recalled pet food products, and unwittingly fed their pets the products which in fact caused their injury or death.

3.      Certain of the Defendants could have prevented the losses to Plaintiff's and scores of other Class members' pets, but for their wanton conduct and failure to warn the public.

4.      Menu Foods, despite learning of the danger to pets' health in their pet food products days, weeks, and even months before March 16, 2007, did not announce a pet food recall, or provide any public notice of such dangers, until that date.

5.      Due to Defendants' conduct, not only are many affected pet owners morning the loss of their pets, but also, pet owners have incurred damages including veterinarian bills, cremation expense, and pet food costs.

**PARTIES**

6.      Plaintiff Rozman, a citizen of the State of Minnesota who resides in this District, purchased some of the pet food products at issue.  Plaintiff's pet companion, Csaba, a golden retriever with years of average life expectancy remaining, died suddenly on March 20, 2007, as a result of eating the "Nutro" brand pet food including "Chunks in Gravy" and "Weight Management" varieties up through the very day of the recall, on March 16, 2007.

7.      Plaintiff routinely fed Nutro wet pet food recalled by Menu Foods on March 16, 2007, to Csaba for years up to that date, including between December 2006 and March 16, 2007.  During that time, Plaintiff purchased "Nutro" products from "PETSMART" retail stores in St. Louis Park, Minnesota, owned/operated by Defendant Petsmart Inc.

2

8.      Defendant Menu Foods Income Fund (or the "Fund") is an unincorporated open-ended trust created in the year 2002 with its principal place of business in Streetsville, Ontario, Canada.

9.      The Fund owns and controls Defendant Menu Foods Limited, a Canadian company with its offices in Mississauga, Ontario, which, on information and belief, manages Menu Foods' United States operations and manufacture of the pet food products at issue.

10.     Defendant Menu Foods Income Fund ("the Fund"), and Defendant Menu Foods Limited each claim to be the leading North American private-label manufacturer of so-called wet pet food products, which are sold by supermarket retailers, mass merchandisers, pet specialty retailers and other retail and wholesale outlets.  Said Defendants caused the Nutro products at issue to be made for Defendant Nutro Products, Inc.

11.     Defendant Menu Foods Midwest Corporation has its principal place of business in the Emporia, Kansas, and is wholly owned by Menu Foods Holdings, Inc.  Most of the contaminated pet food batches originated from Menu Foods' manufacturing plant in Emporia, Kansas, which on information and belief is operated by Menu Foods Midwest Corporation.

12.     Defendant Menu Foods Inc., a New Jersey corporation wholly owned by Menu Foods Holdings, Inc., made a small portion of the pet food products at issue.

13.     Defendant Menu Foods Holdings, Inc. is wholly owned by Menu Foods Limited and organized under the laws of the State of Delaware, and, on information and belief,

holds the assets and/or securities of the Menu Foods Defendants' manufacturing facilities in the United States, including plants located in Kansas and South Dakota.

14.     Defendants, Menu Foods Income Fund, Menu Foods Limited, Menu Foods Midwest Corporation, Menu Foods Holdings, Inc., and/or Menu Foods, Inc., (herein, "Menu Foods"), individually and collectively caused the "pet food products at issue" in this action to be manufactured and designed, on behalf of other co-Defendants in this action and a host of brands, producers, marketers and sellers of the pet food products at issue, for sale to consumers in Minnesota and in other States nationwide.  The actions of Menu Foods Income Fund alleged herein are undertaken on behalf of itself and each of these Menu Foods entities, who acted as agents for each other when perpetrating the conduct herein alleged and who do business under the name "Menu Foods."

15.     Individually and/or collectively, the Menu Foods Defendants caused the pet food products at issue to be placed in the stream of commerce in the State of Minnesota and in the United States.

16.     Defendant ChemNutra Inc. has its principal place of business in the State of Nevada, and purports to import "…quality ingredients to the U.S. for the feed, food and pharma industries…", to deliver "…high-quality chemicals and ingredients from quality-assured manufacturers in China," and to "specialize" in "Vital Wheat Gluten". (www.chemnutra.com.)

17.     ChemNutra Inc. imported, supplied and/or distributed to Menu Foods wheat gluten, which the U.S. Food & Drug Administration (FDA) has reported to contain melamine, and which the FDA has identified as one source of the contamination in the pet food recalled by Menu Foods.

18.    Defendant Nutro Products, Inc. (hereinafter referred to as "Nutro"), which does business under the name, Nutro, has its principal place of the State of California, and caused some of the pet food products at issue, including those purchased by Plaintiff Rozman and consumed by her pet, to be produced, distributed, marketed and sold to Plaintiff Rozman and the Nutro Class.

19.    Menu Foods makes the "Nutro" food contained in the Nutro pet food products at issue which the Defendant, Nutro Products, Inc., caused to be produced, marketed, distributed and sold Plaintiff and the Nutro Class.

20.    Defendant, Petsmart, Inc., has its principal place of business in the State of Arizona, and marketed and sold pet food products at issue at its "PETSMART" pet food retail stores which it operates in Minnesota and nationwide.

21.    The true names and capacities of the Defendants sued in this Complaint as Does 1-100, inclusive, are currently unknown to Plaintiff, who therefore sues such Defendants by such fictitious names.  Each of the Defendants designated herein as a Doe Defendant is legally responsible in some manner for unlawful acts referred to in this Complaint. Plaintiff will seek leave of Court to amend this Complaint to reflect the true names and capacities of the Defendants designated herein as Doe Defendants when such identities become known.

**JURISDICTION AND VENUE**

22.    Venue is proper in this District.  *See, e.g.,* 28 U.S.C. § 1391.  Defendants systematically and continually do business in this District and in the State of Minnesota. Transactions giving rise, in substantial part, to Plaintiff's action occurred in this District.

23.     This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332. The total amount at issue in this case exceeds $5,000,000.

## STATEMENT OF FACTS

***The Conduct of Menu Foods.***

24.     Menu Foods makes the food found in about 100 varieties of the pet food products at issue.

25.     Menu Foods Income Fund's self-styled operating tenets are to "manufacture the private-label wet pet food industry's most comprehensive product program with the highest standards of quality" and to "satisfy the requirements of the ultimate consumers (i.e., dogs and cats)." In reality, Menu Foods falls only too far short of these tenets, to the detriment of affected pet owners like Plaintiff.

26.     Menu Foods Income Fund announced, on March 16, 2007, the recall of "cuts and gravy" style pet food in cans and pouches, which the Menu Foods Defendants caused to be manufactured between December 3, 2006 and March 6, 2007, at two of their United States facilities, for more than 90 pet food brands purchased by Plaintiff and the other Class members, including without limitation "Nutro" brand pet food products – herein, the pet food products at issue. The Fund stated at that time that products not identified in the recall could continue to be used.

27.     Also at that time, Menu Foods Income Fund announced that the recall dates coincide with the introduction of an ingredient from a new supplier, and that it had received complaints about the impact on the renal health of the pets consuming the products at issue.

28.     However, Menu Foods discontinued using the supplier of the ingredient, which they believed to be attributable to the contamination of pet food products at issue, on March 6, 2007 – a full ten days prior to announcing the recall.

29.     In fact, Menu Foods reported to the FDA that it had received complaints that cats and dogs had died or experienced kidney failure as early as February 20, 2007, almost one month prior to the recall.

30.     Menu Foods received similar telephone complaints long before the recall, as early as December 2006, from pet owners indicating that their pets had fallen ill from eating the very same "cuts and gravy" style pet food products at issue.

31.     Weeks before the recall, Menu Foods, instead of alerting the public, initiated food "tasting trials" resulting in the death of seven of the forty to fifty dogs and cats tested, by March 2, 2007, five days after the testing started.

32.     Despite such red flags well before the recall, Menu Foods held off on the recall until March 16, 2007, and at that time announced only that the recall was purely precautionary and merely a "proactive step out of an abundance of caution, because the health and well being of pets is paramount to the [Menu Foods Income] Fund."

33.     It was not until March 24, 2007, that the Menu Foods Defendants widened the recall to include all of their previously recalled brands manufactured at any time including prior to December 3, 2006.

34.     On April 5, 2007, the Menu Foods Defendants expanded its recall again to include an even broader range of dates and varieties.  According to the Menu Foods Income Fund press release on April 5, 2007, Menu Foods announced "an expansion of its recall to include all products manufactured with wheat gluten purchased from ChemNutra

Inc. which Menu Foods' records show was first used on November 8, 2006 and last used on March 6, 2007."

35.    The recall expansion was announced on the heels of disclosure that Defendant ChemNutra Inc. announced its own recall of wheat gluten it imported from Xuzhou Anying Biologic Technology Development Co. Ltd. located in China.

36.    According to the FDA, ChemNutra Inc. provided the contaminated wheat gluten used in the recalled pet food products and sample testing of the wheat gluten and the products revealed the presence of melamine.

37.    Menu Foods has yet to clarify what substance or combination of substances in its pet food (whether melamine and/or otherwise) has led to the death and illnesses of at least hundreds of companion animals around the nation.

38.    In the wake of the unprecedented pet food recall, Menu Foods has nonetheless disclosed that expansion plans for its pet food operations are under consideration, despite quality concerns with their products and the extensive damage they have caused to pet-owning consumers.

39.    The delay in issuing the recall, Menu Foods' receipt of complaints about "cuts and gravy" style pet food as early as December 2006, coincide with the eligibility of the principals, investors and/or trustees of Menu Foods Defendants to obtain cash disbursements from the Fund which were only recently unattainable.  Due to Menu Foods Income Fund's previous debt ratio, it was prohibited from making monthly cash or other distributions, to its members including holders of its Trust Units or Class B Exchangeable Units between December 2005 until September 2006, and to which its members had become accustomed prior to that time.  The individuals presiding on the board of trustees

of the Fund, and the directors and/or officers of Menu Foods GenPar Limited, which administers the Fund, are investors in Menu Foods and hold such Units.

40.     This is not the first time that Menu Foods Defendants have put their corporate welfare, financial interest, or public image ahead of safety concerns.  On May 19, 2004, the FDA issued a Warning Letter to one of the Menu Foods Defendants revealing its "significant deviation" from federal regulations pertaining to prohibited animal proteins in ruminant feed.  The regulation(s) were intended to prevent the establishment and spread of Bovine Spongiform Encephalopathy ("BSE").[1]  Though the regulation(s) required the use of a cautionary statement regarding BSE, the Menu Foods Defendant introduced the product into interstate commerce in October 2003 without the required statement.  (Center for Veterinary Medicine, Fiscal Year 2004 Report.)

41.     The Menu Foods violation occurred despite the fact that in 2003, BSE discovered in the United States and in Canada resulted in the closure of the Mexican and Canadian borders to United States-made pet food and a temporary suspension of Menu Foods product shipments from its Canadian operations.

42.     Moreover, Menu Foods was all too aware of the federal regulation pertaining to BSE prior to October 2003.  In February 2003, "Menu Foods", as a member of the Board of Directors for the Pet Food Institute, unsuccessfully lobbied the FDA not to adopt the regulation that it later violated, expressly on grounds that such a caution statement on pet food product labels would cause consumer perception regarding product safety to decline and result in economic damage.  (Pet Food Institute Letter of February 4, 2003

---

[1]   Menu Foods' source raw materials from various animal groups including those from ruminant animals are, or were susceptible to contracting BSE.

responding to FDA Notice of Proposed Rulemaking entitled "Substances Prohibited

From Use in Animal Food or Feed; Animal Proteins Prohibited in Ruminant Feed.")

***Allegations as to Plaintiff Rozman.***

43.     During the time period inclusive of September 2006 to March 16, 2007, Plaintiff

purchased from, *inter alia*, PETSMART retail stores, and her dog Csaba routinely

consumed, several of the Nutro products at issue subject to the Menu Foods recall,

including without limitation Nutro Weight Management products.  On March 20, 2007,

upon being rushed to the veterinarian, her dog, Csaba, having vomited and become

completely immobile, died.  The veterinarian stated the cause of death to be poison, and

in fact Csaba's creatine levels tested high, consistent with reports around the country

attributing pet injury and death to the tainted recalled pet food.  In fact, Csaba died

because she consumed the Nutro products at issue.

44.     Plaintiff, a PETSMART member, purchased pet food products at issue from

PETSMART stores located in this District all at relevant times.

***General Allegations.***

45.     The pet food products at issue are defectively designed and made, and are toxic,

poisonous or unreasonably dangerous to pets who consume it.  Due to composition of the

products (e.g., the concentration of a tainted wheat gluten ingredient), the products are

not usable for their intended purposes, and when used, cause a significant risk of bodily

harm, including severe or fatal bodily harm (such a renal or kidney failure, or death) to

the pet.

46.     Said defects and inherent dangers existed in the pet food products at issue and in

their tainted ingredients, at the time the products left the control of the Defendants, and at

the time Plaintiff and the members of the Classes purchased said products (though they could not discover same at the time they purchased and used the products).

47.     Defendants had a duty of care to Plaintiff and purchasers of the pet food products at issue; Defendants had a duty to design, manufacture, test, market, distribute, label, promote, and sell, a safe product and/or ingredient, and a duty to warn or disclaim any potential dangers which derive from the unreasonable dangers posed by the product and/or ingredient.

48.     As a result of the Defendants' respective acts and omissions alleged herein, Plaintiff and other members of each Class have been damaged, for example, in amounts equal to the cost of the pet food products at issue, veterinarian bills, cremation and/or funeral expenses, and other, compensatory damages.

49.     Plaintiff and other affected pet owners were, in effect, stuck with opened and/or unopened "leftovers" of recalled pet food products at issue following the Menu Foods recall, and/or had their pets consume pet food not fit for consumption that they purchased from Defendant Petsmart, Inc. and/or other retailers in Minnesota and nationwide.

## CLASS ALLEGATIONS

50.     Plaintiff brings each Cause of Action herein individually and pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of following presently defined Classes:

> Menu Foods Class (or the "Class"):  All persons and entities who purchased the pet food products at issue, defined herein as any pet food product recalled by Menu Foods Income Fund in March or April 2007.

> Nutro Class:  All persons and entities who purchased any Nutro Products, Inc. ("Nutro") pet food product recalled by Menu Foods Income Fund in March or April 2007.

> PETSMART Class:  All persons and entities who purchased, from a PETSMART retail store, a pet food product recalled by Menu Foods Income Fund in March or April 2007.

51.     Excluded from each Class are the officers and employees of each of the Defendants, Plaintiff's counsel, and any judge presiding over this action.

52.     Plaintiff meets the requirements of Rules 23(a), 23(b)(1), 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure.

53.     Plaintiff does not know the exact size of the Classes, since this information is largely in Defendants' exclusive control.  But based on the nature of the trade and commerce involved, Plaintiff reasonably believes that the Classes each number at least in the thousands and that the members of each class are geographically dispersed throughout the State of Minnesota, or alternatively, throughout the U.S. including in Minnesota. Therefore, joinder of the members of each Class would be impracticable, and class treatment is the superior method for fairly and efficiently adjudicating this controversy.

54.     Plaintiff's claims are typical of other Class members' claims because all the respective Class members were injured through the uniform misconduct described herein.

55.     Common legal and factual questions among and within the respective classes exist, such as:

> a.     Whether the respective Defendants caused to be manufactured, distributed, marketed, and/or sold, the pet food products at issue;
>
> b.     Whether the pet food products at issue are unreasonable dangerous or unfit for consumption; and
>
> c.     Whether Defendants' conduct caused injury in fact to Plaintiff and the members of each Class.

56.     Plaintiff can and will fairly and adequately represent and protect the respective Class members' interests, and has no interests that conflict with or are antagonistic to the

any of the Class members' interests. Plaintiff's attorneys are competent in class action litigation.

57.    Class certification of the respective classes is appropriate under Rule 23(b)(3) of the Federal Rules of Civil Procedure because a class action is the superior procedural vehicle for the fair and efficient adjudication of the claims asserted given that:

      a.    Common questions of law and fact overwhelmingly predominate over any individual questions that may arise among or within the respective classes and, consequently, enormous economies to the court and parties exist in litigating the common issues, for each class, on a class-wide basis  instead of on a repetitive individual basis;

      b.    Class treatment is required for optimal deterrence against, and compensation for, Defendants' wrongful conduct alleged herein; and

      c.    The aggregate volume of the claims of each Class, whether considered in a national class or, alternatively, in a Minnesota class, coupled with the economies of scale inherent in litigating similar claims on a common basis, will enable this case to be litigated as a class action on a cost-effective basis, especially when compared with repetitive individual litigation, and no unusual difficulties are likely to be encountered in this class action's management in that all legal and factual questions are common to each Class.

58.    Plaintiff's claims are typical of the other Class members' claims because all of their claims arise out of the Defendants' common courses of conduct.

59.    Class certification is appropriate pursuant to Rule 23(b)(1) of the Federal Rules of Civil Procedure because prosecution of separate actions would create a risk of adjudication with respect to individual members of the respective classes, which may, as a practical matter, dispose of other class members' interests who aren't parties to the adjudication or which may substantially impair or impede individual class members' ability to protect their interests. Separate actions prosecuted by individual class members

would also create a risk of inconsistent or varying adjudications, which would establish

incompatible standards of conduct for Defendants.

60.     Certification of the Menu Foods Class, the Nutro Class, and the PETSMART

Class is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure because

Defendants as described herein have acted on grounds generally applicable to the

members of each class.

**CAUSES OF ACTION**

61.     Each of the preceding paragraphs are re-alleged and incorporated as if set forth in

full in each of the following Causes of Action, which are, to the extent the law or facts

require, alleged in the alternative.

**FIRST CAUSE OF ACTION – NEGLIGENCE**

(On Behalf of the Menu Foods Class and the Nutro Class, Against Menu Foods and
Nutro Products, Inc.)

62.     Menu Foods manufactured the pet food products at issue.

63.     Defendant, Nutro Products, Inc., produced, distributed, marketed and sold the pet

food products at issue sold under "Nutro" brand names.

64.     Each of the Defendants captioned in this Cause of Action breached their

respective duties and duties of care to Plaintiff and other purchasers of said pet food

products at issue, (e.g., to warn, and to design, manufacture, produce, market, distribute,

supply and/or sell pet food products and/or ingredients at issue that are reasonably safe

for pet consumption, for their intended purposes, and for purposes that do not injure the

users of the products,) including their respective aforementioned duties (*see*

STATEMENT OF FACTS, *General Allegations*).

14

65.    Each of said Defendants' respective breaches of the aforementioned duties in the course of failing to warn, and in designing, making, producing, distributing, supplying, marketing and/or selling the pet food products and/or ingredients at issue, caused Plaintiff and members of the Menu Foods Class and the Nutro Class actual, and compensatory damage.

## SECOND CAUSE OF ACTION – STRICT LIABILITY

### (On Behalf of the Menu Foods Class and the Nutro Class Against Menu Foods, Nutro Products, Inc., and ChemNutra Inc.)

66.    Each of the Defendants named in this Cause of Action caused pet food products at issue and/or tainted ingredients therein to be placed into the stream of commerce and sold to Plaintiff and other members of the Menu Foods Class and the Nutro Class.

67.    Plaintiff and the members of the Menu Foods Class and the Nutro Class were damaged as a proximate result of Defendants' conduct.

68.    Plaintiff and the above-named Class members could not, and should not have reasonably expected the pet food products at issue to contain poisonous and/or abnormally dangerous ingredient(s) that the products did and/or were likely to contain.

69.    Defendants, as a result of their above-described conduct, are strictly liable to Plaintiff and said Classes members.  (*See* STATEMENT OF FACTS, *General Allegations*).

## THIRD CAUSE OF ACTION – BREACH OF WARRANTY

### (On Behalf of the Nutro Class Against Nutro Products, Inc.)

70.    Defendant Nutro Products, Inc. expressly warranted that its pet food products are pet food, guaranteed, nutritious and/or suitable for consumption.

71.     The recalled Nutro products purchased by Plaintiff and Nutro Class members are not in fact pet food, are poisonous, are unfit for consumption, and/or are likely to cause illness or death when consumed.

72.     Nor are the recalled Nutro products merchantable or fit for their particular purpose.

73.     Had Plaintiff and other members of the Nutro Class known these facts, they would never have purchased the Nutro pet food products at issue.

74.     Nutro Products, Inc. breached its respective implied warranties of merchantability and fitness for a particular purpose, and its express warranties, which are part of the basis of the bargain for the purchase of its recalled products.

75.     As a proximate result of Nutro Products, Inc.'s aforesaid breaches of warranty and conduct, Plaintiff and the Nutro Class were damaged.

## FOURTH CAUSE OF ACTION – BREACH OF CONTRACT

(On Behalf of the PETSMART Class Against Petsmart, Inc.)

76.     Plaintiff purchased pet food sold by Defendant Petsmart, Inc. between December 3, 2006 and up through the end of February 2007, and prior to that time.  The other members of the PETSMART Class purchased pet food products at issue, whether Nutro products or otherwise, from either or both of the same Defendants inclusive of the time period between December 3, 2006, and March 16, 2007.

77.     Said purchases were made from PETSMART stores based on the mutual, factual understanding of the parties (i.e., of Plaintiff and each PETSMART Class member, and Petsmart, Inc.), at the time of sale, that the food was, as represented, safe for consumption and was in fact truly pet "food".

78.     However, Petsmart, Inc. sold the pet food products at issue, which were not safe for consumption, were not in fact truly pet "food" and/or caused dogs and cats to become ill and/or die.

79.     Petsmart, Inc., by selling Plaintiff and PETSMART Class members pet food that in fact was not truly pet "food", and was not safe for consumption, breached their contracts for the sale of said pet food.

80.     As a result of said breach and material mutual mistake of fact of the parties, Plaintiff and other PETSMART Class members were damaged, and/or the contracts for the sale of the pet food should be rescinded and Plaintiff and the PETSMART Class are due a full refund of the pet food products purchased from Petsmart, Inc.

## FIFTH CAUSE OF ACTION – COMMON LAW FRAUD

(On Behalf of the Menu Foods Class Against Menu Foods)

81.     The Menu Foods Defendants had a duty to disclose that the pet food products at issue are defective, dangerous, and/or cause or reasonably could cause pet injury or death.

82.     However, the Menu Foods Defendants failed to disclose these facts to members of the Menu Foods Class including Plaintiff, and intended that they rely on these omitted facts at the time they purchased the pet food products at issue inclusive of the time period from February 20, 2007 to March 16, 2007.

83.     Plaintiff and the Menu Foods Class would have never purchased these products had they known these omitted facts – and many of their pets, like Csabo, would not have died or suffered injury as a result.

84.     Plaintiff and other Menu Foods Class members were damaged as a proximate result of these omissions (*see* ¶¶ 81-82).

## SIXTH CAUSE OF ACTION – UNJUST ENRICHMENT

### (On Behalf of Each Class Against Each Defendant)

85.    The revenues and profits flowing to and retained by the Defendants from the sale of the recalled pet food products at issue inured to their benefit.

86.    Each of the Defendants unjustly retained gains arising from the sale of said pet food products, which were unsafe for pet consumption and not fit for sale, were less than the product advertised, represented, and purchased and/or were not fit for their ordinary and intended purpose.

87.    The Defendants' retention of financial gains from the sale of said pet food products has unjustly enriched each of them at the expense of Plaintiff and the members of each Class, who are entitled to restitution, and disgorgement of the Defendants' respective ill-gotten gains arising from the sale of the products as a result.

88.    The Defendants' retention of monies received by virtue of their roles in causing said pet food products to be sold to Plaintiff and the other class members violates the principles of equity and good conscience.

### JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all matters so triable.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court enter judgment in the respective Class members' favor and against Defendants, as follows:

A.    That this Court enter an order certifying this action as a class action for each Class defined above or that may be defined in the course of this action, appointing Plaintiff Rozman as class representative for each Class, and appointing Plaintiff's counsel as class counsel;

B.    That this Court find that the Defendants violated applicable law and are therefore liable under said laws as alleged above;

C.    That this Court declare that Menu Foods acted with reckless disregard for Plaintiff, members of the Menu Foods Class and their pets, and that Plaintiff and the members of each Class are entitled to a purchase price refund of the pet food products at issue;

D.    That this Court award to Plaintiff and the members of each Class damages, including actual, incidental, compensatory, consequential and future damages (e.g., cost of veterinarian bills, medication, cremation and funeral expenses, medical monitoring, and pet food) and/or refunds of the pet food products at issue, with interest, and injunctive relief including medical monitoring relief for affected surviving pets;

E.    That this Court award punitive damages against Menu Foods for Causes of Action for which such damages may be had;

F.    That this Court determine that Defendants were unjustly enriched and award restitution and/or disgorgement of their respective ill-gotten gains;

G.    That this Court require each Defendant to account for all revenues and/or profits improperly received as a result of the aforementioned conduct, enjoin each Defendant from dispersing said monies, and impose a constructive trust on said monies;

H.    That this Court award Plaintiff's counsel reasonable attorneys' fees and costs; and

I.    That this Court order any other relief as it deems just, equitable, and proper.

Dated: April 9, 2007                     Respectfully submitted,

STEPHANIE ROZMAN, individually and on behalf all others similarly situated

By:    *s/Garrett D. Blanchfield, Jr.*
Counsel for Plaintiff
Mark Reinhardt
Garrett D. Blanchfield
**Reinhardt Wendorf & Blanchfield**
E-1250 First National Bank Bldg.
332 Minnesota St.
St. Paul, MN 55101

19

Telephone: (651) 287-2100
Facsimile:  (651) 287-2103
mreinhardt@comcast.net
G.Blanchfield@rwblawfirm.com

Frank Jablonski, Esq.
Noah Golden-Krasner, Esq.
**Progressive Law Group, LLC**
354 West Main Street
Madison, WI 53703
Telephone: (608) 258-8511
Facsimile:  (608) 442-9494
frankj@progressivelaw.com
noah@mainstreetustice.com
*Pro Hac Vice Application To Be Filed*

Ilan J. Chorowsky, Esq.
**Progressive Law Group, LLC, Of Counsel**
1130 North Dearborn Street, Suite 3110
Chicago, IL  60610
Telephone: (312) 643-5893
Facsimile:  (312) 643-5894
ilan@progressivelaw.com
*Pro Hac Vice Application To Be Filed*